IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| EDWARD C. HUGLER, <br> *Plaintiff,* <br> v. <br> ADAM VINOSKEY, *ET AL.*, <br> *Defendants.* | CASE NO. 6:16-CV-00062 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This matter is before the Court upon Defendant Michael New's Motion to Dismiss the First Amended Complaint. (Dkt. 40). The First Amended Complaint alleges that Defendants, in their various roles, facilitated the purchase of Sentry Equipment Erectors, Inc. ("Sentry") stock by the Sentry Equipment Erectors, Inc. Employee Stock Ownership and Savings Plan ("the ESOP") for an inflated price—in violation of the Employee Retirement Income Security Act ("ERISA"). (Dkt. 29).

Michael New asks the Court to dismiss him from the case because he argues he was merely an employee—not a fiduciary—and thus not individually liable under ERISA. Because the First Amended Complaint's factual allegations are taken as true at this stage and the Secretary pled sufficient facts about New exercising discretionary authority or control over the management of the ESOP, the Court concludes—for purposes of this motion—that he was a fiduciary. Accordingly, New's motion to dismiss will be **DENIED**.

I. LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the

1

'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## II. FACTS AS ALLEGED

The facts alleged in this case concern a two-step transaction by which the ESOP purchased 100% of Sentry stock for an inflated price. (Dkt. 29 at 4).

Sentry, founded in 1980, was initially owned entirely by Adam and Carole Vinoskey. (*Id.* ¶ 10). The Vinoskeys then created the ESOP, which included both a 401(k) defined-contribution plan and an employee stock-ownership feature. (*Id.* ¶ 11). The ESOP was designed to invest primarily in employer stock, which permitted the Vinoskey's to liquidate their ownership interest in Sentry without finding a third-party buyer. (*Id.*).

Under the terms of the ESOP, terminating employees, which included retirees, were permitted to sell their shares back to the ESOP at a price approved by the ESOP fiduciaries. (*Id.* ¶ 13). In order to determine a fair price, Sentry hired Capital Analysts, Inc. ("CA") to perform

appraisals. (*Id.*). From 2007 to 2011, the resulting stock price ranged from $241 to $285 per share. (*Id.*).

In 2004, the ESOP purchased 48% of the Vinoskeys' Sentry stock for $220 per share, for a total price of $9 million. (*Id.* ¶ 12). The ESOP paid $1.5 million to the Vinoskeys, and the remainder of the purchase price was borrowed from Sentry. (*Id.*). In the following years, Sentry made contributions to the ESOP that allowed the ESOP to repay the loan it had received from Sentry. (*Id.*). The ESOP's debt was fully repaid before 2010, and the shares of Sentry stock purchased by the ESOP were allocated to individual participant accounts as the debts were paid. (*Id.*).

In December 2010, Defendant Adam Vinoskey and/or Defendant Adam Vinoskey Trust ("the Trust"), sold the remaining 52% of Sentry stock to the ESOP at a price of $406 per share and a total sale price of $20.7 million. (*Id.* ¶ 14). This price greatly exceeded the price offered to terminating participants who sold their shares back to the ESOP before December 2010—which ranged from $241 to $285 per share—and the price offered to participants dropped below $285 per share after the sale at $406 per share. (*Id.*).

The $406-per-share price was based on a special appraisal conducted by CA in November 2010 in preparation for this transaction. (*Id.* ¶ 15). The CA valuation erroneously overvalued Sentry's fair market value for numerous reasons, such as: (1) CA used only a three-year loopback period, which failed to capture the peaks and valleys of Sentry's business cycle; and (2) CA used a projected-future-earnings discount rate of only 12.2% in its November 2010 appraisal, despite using a 16.2% rate in 2009 and an 18% discount rate in December 2010. (*Id.* ¶ 16).

Evolve Bank and Trust ("Evolve") was hired as an independent transaction trustee for the 2010 stock purchase and as such was a named trustee to the ESOP. (*Id.* ¶ 8). Evolve was a

"party in interest" and a fiduciary with respect to the plan pursuant to ERISA §§ 3(21)(A), 3(14)(A)–(B). (*Id.*). Defendant Michael New was a lawyer employed by Evolve as its Senior Trust Officer and the head of Evolve's ESOP division. (*Id.* ¶ 9). New performed the duties of the independent transaction trustee and as such was a fiduciary with respect to the ESOP pursuant to ERISA § 3(21)(A) and a "party in interest" under ERISA §§ 3(14)(A)–(B). (*Id.*). New exercised discretionary authority or control over the management of the ESOP and its assets. (*Id.*).

As a fiduciary, New approved the $406 share price on behalf of Evolve as being fair to the ESOP and its participants. (*Id.* ¶ 17). New possessed discretion and was not required to obtain approval from Evolve's Trust Committee before approving the price on behalf of Evolve, the independent transaction trustee. (*Id.* ¶ 9). New relied on CA's appraisal, information provided by Sentry in response to a "due diligence checklist," and an on-site visit to Sentry's plant. (*Id.*). Vinoskey and/or the Trust then accepted the $406 per share price and sold their stock. (*Id.* ¶ 17). Due to the obvious errors in the appraisal, New, Evolve, and Vinoskey all knew the price was excessive and unfair to the ESOP. (*Id.*).

The ESOP paid for the Sentry shares with $8,500,016 in cash, $1,900,080 borrowed from Sentry, and a $10,305,904 note at 4% interest. (*Id.* ¶ 18). These debts harmed—and ultimately devalued—Sentry because it assumed the obligation to make contributions to the ESOP to repay the loan. (*Id.* ¶ 19). This, in turn, reduced the fair market value of the shares allocated to the ESOP and its participants after the initial 2004 stock purchase. (*Id.* ¶ 20). The drop in value occurred without any protections to shield the ESOP participants. (*Id.* ¶ 21).

### III. DISCUSSION

A breach of fiduciary duty claim under ERISA requires Plaintiff to establish three elements: (1) the defendants are fiduciaries; (2) the defendants violated their fiduciary duties;

and (3) the plan suffered a loss due to the breach. *See Smith v. Sydnor*, 184 F.3d 356, 363 (4th Cir. 1999). New argues that the First Amended Complaint fails to satisfy the first element because he was merely an Employee of Evolve and not a fiduciary.

*A. Defining a Fiduciary*

ERISA defines a fiduciary as a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). The Department of Labor has provided additional guidance, stating that "[s]ome offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act." 29 C.F.R. § 2509.75-8 at D-3. "Other offices and positions should be examined to determine whether they involve the performance of any of the functions [of a fiduciary]." *Id.* Further, an ERISA fiduciary "is broader than the common law concept of a trustee;" the term includes not only those named as fiduciaries in the plan instrument, "but any individual who *de facto* performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Custer v. Sweeney*, 89 F.3d 1156, 1161 (4th Cir. 1996).

The parties agree—for the purposes of this motion—that Evolve, as the independent trustee, was an ERISA fiduciary. Evolve was a named trustee to the ESOP for the 2010 stock sale. (Dkt. 29 ¶ 8; dkt. 41 at 8). The key point of contention, however, is whether New, through his role as the Senior Trust Officer, acted as a *de facto* fiduciary.

Courts have struggled to develop a clear test for determining whether an employee of a named fiduciary is also himself a *de facto* fiduciary, and the parties have failed to identify clear precedent on the issue in the Fourth Circuit. New asks the Court to adopt the Second Circuit's test from *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209 (2d Cir. 1987), which he argues

requires the Secretary to pierce the corporate veil in order to find an employee to be a fiduciary. Not only is *Tower Asset* not binding on this Court, but also it is not clear that the case establishes a precedent *requiring* veil piercing.[1] Although the court in *Tower Asset* pierced the corporate veil in order to hold shareholders liable, it did not state (or even imply) that veil piercing is a prerequisite to finding that an individual employee is a fiduciary. In fact, the court stated that "parties who knowingly participate in fiduciary breaches may be liable under ERISA to the same extent as fiduciaries." *Tower Asset*, 829 F.2d at 1220.

Rather than strict adherence to a veil-piercing requirement, the Court looks instead to whether New had sufficient individual discretion in order to be considered a *de facto* fiduciary. As the Fourth Circuit has stated, a *de facto* fiduciary is "any individual who . . . performs specified discretionary functions with respect to the management, assets, or administration of a plan." *Custer*, 89 F.3d at 1161. The Secretary is required to plead "more than the mere recitation of statutory language" and must provide "specific allegations" of discretion—as opposed to "perform[ing] ministerial functions for the plan." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d 434, 446 (D. Md. 2005) (citing *Custer*, 89 F.3d at 1163). Ultimately, the Secretary must alleged facts sufficient to demonstrate that New had an "*individual* discretionary role[]." *Id.* at 447 (citing *Confer v. Custom Eng'g Co.*, 952 F.2d 34, 37 (3d Cir. 1991)).

*B. Analysis*

Turning to the facts alleged in the First Amended Complaint,[2] the Court finds that the

---

[1] The Court also notes that piercing the corporate veil is not particularly relevant in this case. Veil piercing refers to when individual or corporate *shareholders* of a corporation are exposed to liability; holding individual *employees* liable is a separate matter, distinct from veil piercing. Stephen B. Presser, Piercing the Corp. Veil § 1:1 ("The 'veil' of the 'corporate fiction,' or the 'artificial personality' of the corporation, is 'pierced,' and the individual or corporate *shareholder* exposed to personal or corporate liability . . . ." (emphasis added)).

[2] Defendant asks the Court to consider several additional documents attached to his motion. However, for the reasons discussed below in Section III.C, some of these documents

6

Secretary has pled facts sufficient to establish New as a *de facto* fiduciary. As discussed above, the crucial inquiry is whether the Secretary has pled "specific allegations" of an "*individual* discretionary role[]," as opposed to a "mere recitation of statutory language." *In re Mut. Fund Inv. Litig.*, 403 F. Supp. 2d at 446 (citing *Custer*, 89 F.3d at 1163). Furthermore, the Secretary's allegations, taken as true, must demonstrate that New performed more than "only ministerial functions." *Custer*, 89 F.3d at 1163.

The First Amended Complaint alleges that New was a lawyer employed by Evolve as the Senior Trust Officer and the head of the ESOP division, in which he performed the duties of an independent transaction trustee. (Dkt. 29 ¶ 9). This job, by "[its] very nature," may have required New to "perform one or more of the functions" of a fiduciary. 29 C.F.R. § 2509.75-8 at D-3. Nevertheless, the Secretary provides additional details and "specific allegations" that New performed "discretionary functions." *Custer*, 89 F.3d at 1161. Most notably, New (1) selected the $406 share price; (2) signed a document dated December 20, 2010,[3] stating that the $406 stock price was in the ESOP's best interest; and (3) was not required to obtain approval from Evolve's Trust Committee before approving the sale. (Dkt. 29 ¶ 9).

These allegations, accepted as true at this stage, establish that New was a *de facto* fiduciary. Although he was not named as an independent trustee, he exercised individual discretion over the transaction in question by selecting and approving the price on his own. New was not merely signing forms on behalf of Evolve or performing only ministerial functions. The Complaint has alleged that he exercised *individual* discretion over the transaction in question. Not every employee of an independent transaction trustee becomes a *de facto* trustee simply by working on a

---

cannot be properly considered at the Rule 12(b)(6) stage, while others simply do not bear on the Court's analysis.

[3] The First Amended Complaint erroneously states that the document was dated "December 10, 2015," but the parties appear to agree that this was simply a typographical error. (*See* Dkt. 43 at 3 n.6, dkt. 41-2).

transaction such as this, but when an employee exercises individual discretion—such as acting alone to select and approve the transaction price—that employee can be considered a fiduciary.

### C. Attached Exhibits & Factual Disputes

As a final matter, the Court will explain why it did not consider the following documents—which were attached to New's motion to dismiss—as part of its analysis: (1) the Minutes of the Meeting of the ESOP Administration Committee; (2) the Stock Purchase Agreement; and (3) banking regulations from Arkansas. Each document will be considered in turn below.

First, the Court must decide whether to admit the Minutes of the Meeting of the ESOP Administration Committee, which New attached in support of his motion to dismiss. (Dkt. 41-3). New argues this document refutes the Secretary's allegation that New exercised "discretionary authority or control over the management of the ESOP." (Dkt 29 ¶ 9). The Court declines to consider this attachment at this time.

Generally "a court is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999)). Nevertheless, courts may consider matters of the public record and documents attached to the complaint and motion to dismiss, "so long as they are integral to the *complaint* and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (emphasis added). The consideration of other documents can have the effect of converting a Rule 12(b)(6) motion into dismiss into a Rule 56 motion for summary judgment. *Bosiger*, 510 F.3d at 450.

At this stage in the litigation, it would be imprudent to consider New's first attachment, the meeting minutes. The document is neither part of the public record nor integral to the First Amended Complaint—seeing as neither this committee nor this meeting are mentioned in the

First Amended Complaint. *Phillips*, 572 F.3d at 180; *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (considering a document attached to a motion to dismiss if it is "integral to and explicitly relied on in the *complaint*" (emphasis added)).

Rather, the attachment is a record from a meeting, which purports to contradict the allegations in the First Amended Complaint.[4] Such factual disputes are improper at the 12(b)(6) stage because the Court is instructed to "accept[] all well-pleaded allegations in the plaintiff's complaint as true." *Chao*, 415 F.3d at 346. Consideration of New's attachment would run the risk of converting the present motion into a Rule 56 summary judgment motion—which is imprudent at this time because the parties have not have had "ample opportunity to present material." *Bosiger*, 510 F.3d at 450. Accordingly, the Court will disregard New's attachment. If he so chooses, New can submit this (and other) evidence that purports to refute the allegations of the First Amended Complaint in a subsequent summary judgment motion.

Second, New has attached the Stock Purchase Agreement, (dkt. 41-2), which—in his view—demonstrates that New merely signed the agreement "in his capacity as a Senior Trust Officer of Evolve." (Dkt. 41 at 4). Notwithstanding the question of whether the Court can properly consider this document, New exaggerates the document's value at this stage in the litigation. The Secretary has never argued—nor does the law require a plaintiff to show—that New was acting in his personal capacity, *ultra vires*, or separate and apart from Evolve. Rather, the Secretary simply needs to demonstrate that New exercised individual discretionary functions

---

[4] Additionally, it is not clear that the meeting minutes alone—even if considered by the Court—would be enough to effectively rebut the Secretary's claim that New was a fiduciary. The minutes do not definitely establish that New lacked discretionary authority or was performing "only ministerial functions." *Custer*, 89 F.3d at 1163. On the contrary, the minutes merely note that New was authorized to "negotiate and accept the transactional trustee appointment" without additional details about the extent of New's negotiating authority. (Dkt. 41-3 at 1). The act of negotiating and accepting a deal could be construed as a discretionary, rather than ministerial, act—depending on the circumstances.

in approving the stock price. *Custer*, 89 F.3d at 1161. Signing as "Sr. Trust Officer" merely demonstrates that he was acting on behalf of Evolve, (dkt. 41-2 at 9), it does not refute the allegation that he possessed the *individual* discretionary authority to select the share price and execute the transaction.

Finally, New attempts to refute the allegation that he was a fiduciary because "Arkansas banking regulations require that the administration of fiduciary powers be directed by the board, or a fiduciary committee properly delegated authority by the Board." (Dkt. 41 at 9). Because the Court can take judicial notice of the law, *United States v. O'Neal*, 168 F.3d 484 (4th Cir. 1999), this argument warrants consideration. However, this assertion can be easily dispensed, as New mischaracterizes the law at issue. The Arkansas Administrative Code states, "[T]he board of directors may assign . . . the administration of such of the bank's fiduciary powers as it may consider proper to assign to such directors, *officers*, *employees* or committees as it may designate." Code Ark. R. 210.00.7-47-701.9(c)(1)(A) (emphasis added). The plain language of this passage demonstrates that, although the board may delegate its authority to a committee, it may also delegate its authority to individual officers or employees. Accordingly, the Court will disregard this argument and accept the Secretary's factual allegations as true for the purpose of this motion.

## IV. Conclusion

Defendant New comes before the Court asking that he be dismissed from the case because he claims that he was not a fiduciary under ERISA with respect to the transaction in question. In support of his argument, New relies on a misreading of the statutory provisions and case law defining an ERISA fiduciary, and he provides documentary evidence that is not proper for a Rule 12(b)(6) motion. Such factual disputes are not appropriate at this stage. Taking all allegations in the First Amended Complaint as true, the Court holds that the Secretary has pled facts sufficient to establish New as a *de facto* fiduciary beyond the "speculative level." *Twombly*,

550 U.S. at 570. Accordingly, Defendant New's motion to dismiss will be **DENIED**.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to Plaintiff, Defendants, and all counsel of record. An appropriate Order will issue.

Entered this  2nd  day of May, 2017.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE